[No. 12642.   Department One.   July 29, 1915.]

## M. C. Lord, *Respondent*, v. David H. Miller *et al.*, *Appellants.*[1]

Sales—Option—Acceptance—Action Upon.  Where an option to purchase machinery was acted upon by the purchasers, who took possession, dismantled and removed it from its previous location, changing its condition and status and destroying the identity of some of it, the option was accepted and the vendor could enforce payment of the agreed purchase price.

Pleading—Matters in Evidence—Affirmative Answer—Necessity.  In an action for breach of defendant's contract to furnish the money for a joint venture in purchasing and reselling certain property, the defendant, upon admitting the contract and denying its breach, is not entitled to show, as excuses for nonpayment, that the payment was not to be made until delivery of the property at Seattle, that such delivery could not be made within the time allowed by reason of failure of transportation, and that the title to the property was defective by reason of liens against it; since they were special matters in defense, to be affirmatively pleaded.

Contracts—Rescission—Grounds — Claim of Defect in Title.  Rescission of an agreement to furnish the money to purchase certain property is not warranted by the fact that certain bondholders had threatened to establish liens or title of some kind to the property, in the absence of evidence of any actual defect or *bona fide* claim sufficient to dispossess the purchaser, or at least to have had some substance and color in law or equity.

Appeal from a judgment of the superior court for King county, Albertson, J., entered September 12, 1914, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract.   Affirmed.

*Preston & Thorgrimson*, for appellants.

*Elias A. Wright* and *Sam A. Wright*, for respondent.

Holcomb, J.—Respondent sued for damages for an alleged breach of an agreement between respondent and appellant David H. Miller, and a verdict by the jury for $4,000 in favor of respondent was reduced by the court, on motion

[1]Reported in 150 Pac. 631.

for new trial, to $2,000, for which amount judgment was entered.

There were, in fact, two separate agreements on which respondent's action devolved. The direct agreement between respondent and Miller was evidenced by a writing set out at large in the complaint. By this agreement, executed July 24, 1913, recital was made that the parties had agreed to a joint venture for the purchase and resale of the property and property interests of the Michigan-Alaska Development Company, consisting of a railroad, railroad cars, and equipment, telephone line, wharf, stock, tools, machinery and equipment in and about the premises, buildings at Homer, Alaska, and at the mines, sawmill, household goods, office furniture and fixtures, live stock, merchandise in store, etc. It was agreed, in short, that Miller should furnish the necessary money for the purchase, dismantling, shipment, resale, or other disposition of all the above described property; that respondent should, as soon as convenient and proper, proceed to the location of the property and, with all possible despatch, dispose of the property to the best advantage of both parties; that if it should be deemed best and most advantageous, respondent could dismantle and ship the property from the place where it was located, for disposition or sale; that respondent should use the money to be furnished him by Miller exclusively in the prosecution of the enterprise, unless authority to use it otherwise be given by Miller in writing; that respondent should give his attention to and use his best efforts, skill and powers for the joint interests, profit, and advantage of the parties; that each party should receive fifty per cent of the net profits of the enterprise. The other agreement, also made July 24, 1913, was an option agreement between these parties and the Michigan-Alaska Development Company, whereby these parties paid $110, as earnest money and as part of the purchase price, to the Michigan-Alaska Development Company, of all the personal property of that com-

pany in Alaska, the purchase price being $4,500, and the option to be completed in ninety days.

The appellants went to trial on general denial of respondent's allegations, except they admitted the contract as pleaded. The breach complained of was that Miller never did complete the purchase under the option within the time stipulated, but allowed the same to lapse. The evidence on the part of respondent at the trial went further and tended to show that Miller did in fact, shortly after the expiration of the option period, pay the remainder of the purchase money to the Michigan-Alaska Development Company, and resold a part of the property at a profit. He had caused the part sold to be brought to Seattle, but left a large part of the property in Alaska.

Appellants contend, *inter alia*, that the trial court did not submit the case to the jury on the proper theory, and erred in instructing the jury that the option agreement, being accepted by these parties, constituted a contract which was enforceable against these parties by the Michigan-Alaska Development Company, and that it could have required them to pay the balance of the $4,500 purchase price within a reasonable time after the expiration of the ninety days; that by virtue of the contract sued on between Miller and Lord, whereby the purchase price was to be paid the Michigan-Alaska Development Company by Miller within ninety days, if he failed to pay it as agreed, and Lord lost anything by reason of Miller so failing to pay the purchase price of the property, then Lord would be entitled to recover the amount of his loss. Appellants argue that "the question of fact for the jury to decide, of whether there had been the breach alleged, was thus taken away from them," and "in any event, it was error for the court to instruct that the contract between the vendor and the partners was enforceable absolutely."

While it may have been immaterial to the issues, it certainly is correct that, under the circumstances proven in the case, to the effect that respondent immediately took posses-

sion of the property in Alaska, dismantled and removed it from its previous location, and prepared it for shipment, thus changing its condition and status, and destroying even the form and identity of some of it, the vendor could enforce payment of the agreed purchase price. Nothing could, legally, be more obvious. The recognition of this legal liability doubtless induced appellants to pay the vendor after the option expired. Under undeniable legal principles, it certainly could not prejudice appellants to instruct the jury that the option was accepted and acted upon by the appellants and respondent, and was enforceable against them. Appellants further insist that the evidence incontrovertibly shows facts sufficient to support a rescission.

The contention that, by the foregoing instructions, the court excluded from the jury's consideration the question of whether or not a breach of the contract between these parties had occurred, is untenable. There was no affirmative matter in avoidance pleaded by appellants. Their answer denied the nonpayment of the purchase price and allowance of the option to lapse. At the trial, however, appellants admitted the nonpayment of the balance of the purchase price, and further stated that they "were not in position to pay it previous to October 24, 1913." They sought to show that the reason why they did not complete the payment was, (1) that the payment was to be completed only on the delivery of the property intended to be shipped at Seattle; (2) that, by reason of the failure to obtain transportation, the property could not be delivered in Seattle before October 24, 1913; and (3) that the title to the property was defective in that there were liens of some kind against it. As to these propositions, the contract having been admitted, they were special matters in avoidance and should have been, as the court intimated, affirmatively pleaded. Rem. & Bal. Code, § 264 (P. C. 81 § 235); 31 Cyc. 215, 680-1.

The contract pleaded and admitted, and the option instrument indicated, no contemplation of the parties, either to the

option or to the agreement between these parties, that the payment was only to be made by appellants on receipt of the goods in Seattle. On the contrary, the contract between these parties plainly stipulated that "if it be deemed best and most advantageous to dismantle and ship from the present location for disposition and sale, then said first party [respondent] will proceed with all diligence to have said property shipped." In case, therefore, it had not "been deemed best and most advantageous to dismantle and ship the property from Alaska," appellants would never be bound to pay the purchase money. Obviously such was never the intent of the parties. The option instrument was silent as to *where* the purchase money was to be paid, but was explicit as to *when* it was to be paid. It was to be paid by appellants in ninety days from July 24, 1913. Where the property was situated at that time was, as the court below indicated, immaterial. Nor was it material that one certain transportation company refused to receive and transport the property within the life of the option. It is a peculiar fact that, shortly after the option expired, appellants were able to procure transportation for about half the goods, caused them to be brought down from Alaska, resold them, and paid the agent for the vendor, who accepted the purchase money. The averment and admission of the contract, the averment and showing of complete performance thereof on his part by respondent, the showing and admission that appellant Miller failed to perform as agreed the one specific thing by him to be performed, constituted a complete *prima facie* right to recover by respondent such damages as he proved. Any reasonable and valid excuse on his part for the default by appellant Miller was for him to affirmatively aver and prove. The court, however, admitted all the evidence offered tending to excuse the appellant Miller for his default. But it refused to instruct the jury, as requested by appellants, that "before plaintiff can recover he must show that the option was not carried out through the fault of the defendant; it will not make out a *prima facie* case merely to

show that the option was not consummated." There was only hearsay evidence, the most remote and conjectural, that "eastern bondholders had threatened suit to establish liens or title of some kind to the property in Alaska," by reason of which a transportation company had refused to receive and transport the goods from Alaska. This was not evidence of any actual defect in, or incumbrance upon, the title to the property. Totally irresponsible parties, holding no semblance of a valid claim to, or lien upon, the property, might have threatened such suit. To have avoided the sale, the claim of lien or title must have been *bona fide* and sufficient to dispossess the purchaser, or at least have had some substance or color in law or equity to warrant a rescission of the executory contract, and not a mere assertion. 35 Cyc. 416. There was no such claim, defect, or cloud shown in this case. Hence, there was no risk and no failure of the joint enterprise by reason thereof.

Under the pleadings and the proofs, we think there was no error in refusing to instruct as requested by the appellants, nor in instructing as complained of. The other instructions requested by appellants and refused by the court were mere elaborations of those herein mentioned, and come under the observations here made.

We perceive no error. Judgment affirmed.

MORRIS, C. J., PARKER, MOUNT, and CHADWICK, JJ., concur.